FINNIE v. WALKER et al.

(Circuit Court of Appeals, Second Circuit. April 22, 1919.)

No. 180.

1. INSURANCE ⬥⟹122—ASSIGNMENT OF LIFE POLICY—VALIDITY—WAGERING
CONTRACT.

The assignment of a life insurance policy, in effect contemporaneously with its issuance or later, with wagering intent, to one having no insurable interest as relative, dependent, or creditor, is invalid but does not invalidate the policy and the proceeds received by the assignee are recoverable for the benefit of the estate of the insured, less such sums as the assignee may have paid out thereon.

2. INSURANCE ⬥⟹648(1)—SUIT AGAINST ASSIGNEE—EVIDENCE.

Evidence that an insured was in poor health at the time of the assignment of the policy, and of knowledge of such fact by the assignee, is competent on the question whether the assignment was with wagering intent.

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Nelle E. Finnie, administratrix of the estate of David T. Finnie, deceased, against Alfred P. Walker and George K. Morrow. Decree for defendants, and complainant appeals. Reversed.

Rollins & Rollins, of New York City (E. A. Merrill, of Westfield, N. J., on the brief), for appellant.

Owen N. Brown, of New York City (Conover English, of Newark, N. J., of counsel), for appellees.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The Equitable Life Assurance Society, in August, 1912, issued five policies of life insurance in the principal sum of $5,000, upon the life of David T. Finnie. These policies were all delivered to A. S. Herenden, general agent of the society, and remained in his possession until their delivery by him.

[1] Policy No. 1,778,976, payable to Finnie's wife, with right of revocation, was assigned September 26, 1913, to Morrow. Finnie paid the first premium to the agent of the company. Policy No. 1,778,977, payable to the estate of Finnie, was assigned August 22, 1912, to the appellee Morrow. Policy No. 1,778,978, payable to the estate of Finnie, was assigned August 20, 1912, to Morrow. Policy No. 1,779,245, payable to the estate of Finnie, was assigned September 12, 1912, to Morrow. Policy No. 1,779,241, payable to the estate of Finnie, was assigned August 22, 1912, to the appellee Walker, and on September 16, 1913, Walker assigned the policy to Morrow. The premiums on four of these policies were paid by Morrow, and on the fifth by Walker's note, but Morrow paid the note.

Finnie died September 18, 1917, and the moneys due on the five policies were paid to Morrow on September 20, 1917. The administratrix of the estate now sues in equity to recover the proceeds paid to Morrow, and praying that the appellees be allowed their respective

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sums paid for premiums, with interest, and that the difference be paid to the estate she represents. The theory of the action is that each assignee had no insurable interest in the life of Finnie and that the assignments were in law wagering contracts. The trial judge dismissed the bill.

If Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, has not been overruled or is not inconsistent with what was held in the later case of the Supreme Court, Grigsby v. Russell, 222 U. S. 149, 32 Sup. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863, the appellant is entitled to the relief she seeks. In the Warnock Case, supra, the plaintiff's intestate, on procuring insurance upon his life, entered into an agreement with a firm whereby it was to pay all fees and assessments payable to the underwriters on the policy and to receive nine-tenths due thereon at his death. Pursuant to this agreement, the intestate executed an assignment of the policy and the firm paid the fees and assessments. Upon his death, the firm collected from the underwriters nine-tenths of the amount due on the policy, plus the premiums paid. The administrator sued the underwriters for this nine-tenths. There was no claim or charge of fraud upon the part of any one. In approving a recovery, the court said, speaking of insurable interest:

"But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are therefore, independently of any statute on the subject, condemned, as being against public policy.

"*The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name. Nor is its character changed because it is for a portion, merely, of the insurance money.* To the extent in which the assignee stipulates for the proceeds of the policy beyond the sums advanced by him, he stands in the position of one holding a wager policy. The law might be readily evaded, if the policy, or an interest in it, could, in consideration of paying the premiums and assessments upon it, and the promise to pay upon the death of the assured a portion of its proceeds to his representatives, be transferred so as to entitle the assignee to retain the whole insurance money. * * *

"It is one which must be treated as creating no legal right to the proceeds of the policy beyond the sums advanced upon its security; and the courts will therefore hold the recipient of the moneys beyond those sums to account to the representatives of the deceased. It was lawful for the association to advance to the assured the sums payable to the insurance company on the policy as they became due. It was also lawful for the assured to assign the policy as security for their payment. The assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums, with interest. To hold it valid for the whole proceeds would be to sanction speculative risks on human life, and encourage the evils for which wager policies are condemned."

In an earlier case, Cammack v. Lewis, 15 Wall. 643, 21 L. Ed. 244, the policy of insurance for $3,000 was procured by the debtor at the suggestion of a creditor to whom he owed $70. It was assigned to the creditor to secure the debt, upon his promise to pay the premiums, and, in case of the death of the assured, one-third of the proceeds was to go

to his widow. On his death, the assignee collected the money from the insurance company and paid the widow $950 as her proportion, after deducting certain payments made. The widow, as administratrix of the deceased's estate, sued for the balance of the money collected and was successful. It was held that the transaction, so far as the creditor was concerned, for the excess beyond the debt owing to him, was a wagering operation, and that the creditor, in equity and good conscience, should hold it only as security for what the debtor owed him when it was assigned, for such advances as he might have afterwards made on account of it, and that the assignment was valid only to that extent.

In the case relied upon by the appellees (Grigsby v. Russell, 222 U. S. 149, 32 Sup. Ct. 58, 56 L. Ed. 133, 36 L. R. A. [N. S.] 642, Ann. Cas. 1913B, 863) it, at best, limited the doctrine of Warnock v. Davis, supra, so as to permit a policy previously taken out, under circumstances which made it perfectly valid, to be assigned to one who had no insurable interest in the life of the insured, providing a valid consideration was paid therefor by the assignee. A life insurance policy taken out in good faith by the insured, with no idea of assigning it, can afterwards, in good faith, and for a valuable consideration, be sold and assigned to one who has no insurable interest in the life, under this latter case. In considering the authorities, Justice Holmes said:

"And cases in which a person having an interest lends himself to one without any as a cloak to what is in its inception a wager having no similarity to those where an honest contract is sold in good faith. * * * But the case in which the strongest of them occurs was one of the type just referred to, the policy having been taken out for the purpose of allowing a stranger association to pay the premiums and receive the greater part of the benefit, and having been assigned to it at once. Warnock v. Davis, 104 U. S. 775 [26 L. Ed. 924]."

In the Grigsby Case, supra, the insured, after paying two premiums and when the third was overdue, was in need of a surgical operation, obtained it from a doctor, and prevailed upon the doctor to buy the policy, for which the doctor paid $100. This was held to be a valid assignment. It will be noted, however, that this was an out-and-out assignment, and there was no agreement, as in the Warnock or Cammack Cases, for a part interest only in the insurance; in other words, there were no conditions imposed which limited the extent of the assignment.

These policies were issued to the estate of the intestate and the salutary rule of public policy which condemns wagering assignments, forbids the appellees retaining the moneys they received, other than the premiums paid by them. Contemporaneous assignments of life insurance policies are wagering contracts, and should be treated as such, just as the policies are where the beneficiary has no insurable interest. Here the policy was taken out with a view of its assignment. The assignment was contemporaneous with the issuance of the policy, and the facts disclosed in this record permit a fair inference that it was the intent of the appellees to obtain just such a result as the issuance of a wagering contract of insurance permits.

Justice Holmes, in Grigsby v. Russell, supra, indicates a desire on the part of the court to give as much commercial freedom and value as possible to the owner of a life insurance policy which has a market value; but that decision cannot be extended to cover facts such as are presented here, where there are four assignments of policies, with no consideration moving to the insured, and no consideration of commercial advantage is urged to sustain the assignments. As we read the opinion of the court, it is at least intimated that the court would follow the Warnock Case under similar circumstances, and it therefore follows that this court should visit its condemnation upon the assignments in the case now under consideration in this court.

It seems to us the facts require a conclusive presumption of wagering intent as to the fifth (that is, policy No. 1,778,976), assigned to Morrow in September, 1913. Even though this assignment be remote, in point of time, from the other contemporaneous assignments, and therefore not subject to the condemnation by reason thereof, it will be held illegal and void beyond the sums advanced. This presumption was kept alive because of the inference in law arising from the wagering intent, established by the fact that Morrow knew, at the time of this assignment, that Finnie was a very sick man, and that the amount of the contract, compared with what was paid, permitted playing for a large stake. There was an intimate and close business connection between this transaction and the previous ones, wherein Morrow was gradually accumulating the five policies upon the life of the deceased. If, from these facts, the wagering intent may be presumed, as it must, that avoids the assignment. Any contract, the tendency of which is to endanger the public interest and affect the public good, and which is subversive of sound morality, ought never to receive the sanction of a court of equity or be the foundation for its judgment. Ritter v. Mutual Life Ins. Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693.

In endeavoring to do equity between the two parties, the appellees will have full equity administered to them by obtaining the premiums and interest and other charges which they may have invested in keeping alive these policies. Relief should not be denied the appellant because the appellees have been paid by the insurance company. They may not keep the moneys which, through error of law or fact, or both, have been paid to them by the insurance company. Because of the mistake of the insurance company, they should not have what the law says is not their property. The right to make them account as trustees for the moneys paid them by the insurance company cannot be denied the appellant. This would be contrary to Warnock v. Davis, as demonstrated by the language of the court above quoted. The assignment of a policy to a party not having an insurable interest, with wagering intent, is as objectionable as the taking out of a policy in his name. The court can do no other than declare the assignment void; but it does not follow that the policy, which was issued and under which the money was paid, is void. Where the courts have held the assignments void and unenforceable, nevertheless the policy is valid, and the assignee may retain the antecedent debt or other consideration and advances made to keep the policy alive.

The theory of such a result seems to be that the assignment is said to be good as a designation of an appointee to receive payment from the insurance company and as a security for advancements. The illegality is in the attempt of the assignee to retain the entire proceeds. Stevens v. Warren, 101 Mass. 564; Page v. Burnstine, 102 U. S. 644, 26 L. Ed. 268; Warnock v. Davis, supra. Certainly, if the assignment is held to be invalid, the administratrix may recover by virtue of her original title to the policy, for the reason that it never went out of the assignor or vested in the assignee. One who seeks equity must do equity, and therefore the administratrix here must permit the appellees' to retain, out of the proceeds of the policy, the consideration and other charges paid.

[2] Since there must be a new trial, we must consider the appellant's fourth assignment of error. The District Judge in his opinion, stated that the case presented a legal point of great importance, new in this jurisdiction, and he treated it as a law point, stating that if he was wrong there must be a new trial, because of the rejection of evidence offered by the appellant which would be of importance under the theory of law announced in this opinion. The appellant offered evidence as to Finnie's bad health and knowledge thereof by assignee. Condition of health of the insured at the time of the assignment of his life insurance policy was competent and important in determining the question of wagering intent. It was therefore error to exclude this testimony.

Judgment reversed.

WARD, Circuit Judge (dissenting). The theory of the bill is that the assignees of the policies had no insurable interest to sustain absolute assignments, and that they should be construed only to secure any advances made to Finnie in his lifetime; the balance of the insurance collected by the defendant Morrow from the insurance company to be paid to Finnie's estate.

The defendants in their demurrers denied that they had advanced any moneys to Finnie in his lifetime, or that they held the policies as collateral security. On the contrary, they claimed to be absolute owners as purchasers. It is true that the defendant Morrow testified on the trial that Finnie owed him some $400 to $500; but this was rightly rejected by the District Judge as having been a consideration for the assignments to him. The bill cannot be sustained on this theory. Neither of the defendants had any insurable interest in Finnie's life as relative, dependent, or creditor.

Policy 1,778,976, dated August 20, 1912 and executed by the company August 21st, was delivered to Finnie against his note for the first annual premium, which note he paid. Subsequently he revoked the designation of his wife as beneficiary, and assigned the policy to the defendant Morrow for an expressed consideration of $1. This being a valid policy on Finnie's life, it was his property, which he could sell or give to any one, without reference to insurable interest, as held in Grigsby v. Russell, 222 U. S. 149, 32 Sup. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863.

The other four policies, though payable to his estate, were never delivered by the company to Finnie; he never paid any premiums upon them, and never owned them at all. They did not come into existence until delivery to his assignees against payment by them of the first annual premium. Finnie never had a valid policy to sell or give away, within the decision in the Grigsby Case. The situation was exactly as if the assignees had originally taken out wagering policies upon his life payable to them. Therefore I think, not merely the assignments, but the policies themselves, were void as wagering insurance. The fact that the insurance company has paid them to the defendant Morrow, assignee, as absolute owner, without raising any question of invalidity, does not change their character qua Finnie's estate.

But the court, relying upon Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, holds that the assignments are void, but the policies valid. It must be admitted, as intimated by Mr. Justice Holmes in the Grigsby Case, that the language of Mr. Justice Field was too broad, although he finds the decisions themselves to be consistent with each other. I think they can be reconciled on the theory that in Warnock v. Davis the policy itself was held valid, perhaps because taken out by and delivered to the insured, he paying at least one-tenth of the first annual premium, and being liable for at least one-tenth of the subsequent premiums, and his widow, or, in case of her death, his estate, being entitled to at least one-tenth of the insurance.

This may have justified treating the assignment of the remaining nine-tenths as valid, but only as security for repayment of premiums advanced by the assignee. But the four policies in the instant case were in my opinion never valid at all, being pure wagers from their inception, and therefore neither Finnie in his lifetime nor his estate after his death had any standing to make claims against the insurance company or the person to whom it has paid the insurance. I think the decree should be affirmed as to the first policy, because it was valid, and as to the four policies, because Finnie's estate has no interest in them, and not because they are valid.