### FEHR v. CAWTHON.*

(Circuit Court of Appeals, Sixth Circuit. October 5, 1923.)

No. 3844.

1. **Insurance ⬦⟹116(5)—Life policy issued to creditor not invalidated by simultaneous discharge of debt.**

   The fact that a creditor, having an insurable interest in the life of his debtor, in consideration of the issuance to him as payee of a policy on the life of the debtor, discharges the debt, *held* not to invalidate the policy.

2. **Insurance ⬦⟹114—Question of insurable interest material only to insurer.**

   Where a life policy has been paid in full to the payee by the insurer, the question of his insurable interest cannot be raised in a controversy over the ownership of the proceeds.

3. **Insurance ⬦⟹593(1)—Creditor held to have accepted life policy in payment of, and not as security for, his debt.**

   The intention of the parties, and the effect of an arrangement by which a debtor applied for and obtained a policy of insurance on his life, payable to a creditor, who paid the premium and all charges, *held* to have been that the policy should be accepted in cancellation of the debt and not as security therefor, and to entitle the creditor to the full proceeds of the policy on the death of insured.

Appeal from the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Suit in equity by Leila A. Cawthon, administratrix, against Fred W. Fehr. Decree for complainant, and defendant appeals. Reversed.

Sidney G. Stricker, of Cincinnati, Ohio (Stricker & Johnson, and Nathaniel Wright, all of Cincinnati, Ohio, and Hirsch, Sherman & Limberg, of New York City, on the brief), for appellant.

Murray Seasongood, of Cincinnati, Ohio (Murray Seasongood, Lester A. Jaffe, and Paxton, Warrington & Seasongood, all of Cincinnati, Ohio, and Samuel Schwartz, of Houston, Tex., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Friedman Company, a creditor of Cawthon, was the beneficiary of a $10,000 policy on his life. Upon the winding up of the Friedman Company, Fehr, defendant below and appellant here, became owner of all its assets, including this policy and any indebtedness against Cawthon. The beneficiary paid the initial premium in 1918 and the first annual premium. During the next year Cawthon died, and the amount of the policy was paid to Fehr. Some months later Cawthon's administratrix brought this suit in the court below upon the theory that Fehr held, as trustee for her, the amount

of insurance he had received in excess of Cawthon's indebtedness. The trial court decreed accordingly.[1]

[1] It is Fehr's theory that in exchange for and in consideration of the policy, the Friedman Company discharged the debt. It has been urged that if this is so, then the Friedman Company had no insurable interest in Cawthon's life, and the policy was void. It would not seem that any such conclusion is required. It is conceded that a creditor has an insurable interest in a debtor's life and a policy issued to a creditor is valid. We may assume that, typically, the question whether the creditor has the whole title or is trustee for the insured for the surplus is a question of fact; but, however that might be, there could be no doubt, since Grigsby v. Russell, 222 U. S. 149, 32 Sup. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863, that in the latter class of case, an assignment of his interest by the insured to the creditor, the payee in the policy, in exchange for a discharge of the debt or any other good consideration, would leave the policy of continuing validity; and it could not seem to be substantially material whether the debtor makes this arrangement just after the policy is issued, or whether the discharge of the debt and the issue of the policy are simultaneous; in either case the creditor's insurable interest underlies the transaction.

Of the rules announced in Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, it is not easy to know just what remains after the decision of the Grigsby Case. When the latter case was in this court (Russell v. Grigsby, 168 Fed. 577, 94 C. C. A. 61), Judge (later Justice) Lurton wrote a careful opinion, finding that there could be no logical distinction between an original payee without insurable interest and an assignee with the same lack. The decision of the Supreme Court upset this theory, and held that such an assignee could take a good title. We cannot see that the rule of Warnock v. Davis can now go beyond a case where the original payee, or the one who, by simultaneous arrangement, is to be the assignee, does not have the required interest; nor how it can now reach a case where the payee had the full right to take out a policy in its own name for the protection of its own interest and thereby secure an undoubtedly valid contract. See both opinions in Finnie v. Walker (C. C. A. 2) 257 Fed. 698, 702), 168 C. C. A. 648, 5 L. R. A. 831. We do not overlook several decisions of state courts holding that a creditor may never have more than his debt, interest, and premiums. We are not satisfied that they can be reconciled with the true principle of the Grigsby Case.

[2, 3] However all this may be, it is as true here as it was in the Grigsby Case that no one can raise the question whether the policy was invalid for lack of insurable interest. The company has paid it in full; and while the money is not in court as it was in the Grigsby Case, the situation is wholly analogous; for the decree in the trial court was that Fehr pay the surplus to plaintiff, with the same result as

---

[1] We do not find in the record claim or proof that the nonresident administratrix, duly appointed in her own state, had obtained ancillary appointment in Ohio; but no objection was made for this reason, and, in view of the result reached, the point requires no further attention.

if the fund were in court for distribution. Hence we must pass by all questions argued as to insurable interest, and come to the question, which is one of fact, as to what was the intent of Cawthon and the Friedman Company concerning the surplus beyond the indebtedness. It is stating the same question in another form to say that it is whether the policy was taken in satisfaction and cancellation of the debt, or taken only as security for the continuing debt.

In solving this question of fact, we do not have the benefit of any expressed conclusion by the trial judge, who seems to have adopted the theory that unless the intent was to secure the surplus to the insured, Fehr's defense would fail because the policy would be one of wager. The contract was made by exchange of letters. Cawthon had gone into bankruptcy, and after the payment of a 20 per cent. dividend, there evidently remained trifling assets. The Friedman Company had a claim with about $2,000 remaining unpaid. After some months and when Cawthon's discharge in bankruptcy was considered as inevitable —if indeed, it was not supposed to be already granted— the Friedman Company wrote:

"We would now like to inquire whether you would be willing to erase the final amount we lost of $2,139.89, which, although you are not legally reliable [sic] for, is still a moral obligation, and we can give you the opportunity to clean the slate at absolutely no cost to you. We think we will be able to obtain some insurance on your life that will take care of an indebtedness of this kind and on which we will pay all premiums and all expenses attached thereto. We would like to hear from you whether you would be kind enough to consider a proposition of this sort, as you will know that the writer, having just started in business prior to selling you the goods, suffered a great loss when the misfortune befell you."

To this letter Cawthon replied:

"No, I will have no objection to your taking a policy on me, but I hope I will be able to make money enough to pay everything I owe before you will collect on my life insurance. I will never quit trying and if I can make it, intend to pay every cent I owe."

Pursuant to these letters, Cawthon made application in the usual form for two policies of $5,000 each, payable to the Friedman Company, whose status was said to be that of creditor. As it turned out, a discharge in bankruptcy had not been issued when Cawthon later died, and subsequently a dividend in bankruptcy of about 2½ per cent. was received and retained by the creditor.

The original proposition, accepted by Cawthon, would seem to be too clear for dispute. The proposal to "wipe the slate clean" could mean nothing except to pay the debt; and whether the debt was then, or would later be, a moral instead of a legal obligation, could make no difference as to the sufficiency of the discharge to serve as a consideration. We find only two items of evidence having any tendency to show that the debt was not to be discharged by the policy. The first is what Cawthon says about his expectation of paying later. This is not forceful. It would not bind him, and it should not bind the other side. Doubtless he had a vague intention, or at least a desire, to pay; and it was very probable that the Friedman Company would have been

glad to accept payment of the amount of the debt, plus all premiums and interest; but these probabilities do not vary the contract which was actually made.

The second is the later receipt of the final bankruptcy dividend. This was not received until after the rights of Fehr had culminated by Cawthon's death. Fehr was not in truth a creditor, and his status could not be changed by his inadvertent, or even deliberately wrongful, acceptance of the trifling final dividend sent in due course of business by the assignee, who of course did not represent Cawthon for any such purpose. Under the circumstances shown by the record, we cannot give the acceptance of this dividend any controlling evidential effect; but the amount of it should not have been retained by Fehr and it should be paid over to the administratrix.

As against these two items which have a possible tendency against the cancellation, is to be set the fact that it would seem very unnatural for a creditor with a $2,000 claim to make an initial payment of $650 and expect to pay annually thereafter nearly $500, possibly for 20 years and probably for 15 years, all for the sake of a security upon the claim which would be no security if the debtor lived his expectancy, and all without any expectation of a possible counter profit to balance the risk. The presumption that any creditor making that arrangement would do so largely in consideration of the chance of profit appeals to us as strong and violent.

If Cawthon had later been sued by Fehr for this debt, and had pleaded satisfaction and discharge by this transaction, we think the defense must have prevailed.

We do not think Fehr should be concluded against the theory of absolute discharge of the debt by the fact that he did not positively adopt this theory in his pleadings. It was not fatal for him in justifying the issuing of the policy to speak of himself as creditor and state the amount of the debt.

Upon the whole case, we must conclude that both in law and in fact, the contract between Cawthon and the Friedman Company contemplated that the entire proceeds of the policy, in case of Cawthon's death, should belong to the Friedman Company.

It follows that the decree below must be reversed, and the case remanded, with instructions to dismiss the bill, upon the payment into court by Fehr of the amount of the final dividend. Costs of this court will be recovered by Fehr; costs below to be awarded in the discretion of that court.