## PENDERY v. FORT WORTH STATE BANK et al. (No. 7177.)

(Court of Civil Appeals of Texas. San Antonio. May 28, 1924.)

**1. Appeal and error ⬤⇒767(1)—Appellate court may not discipline counsel for want of courtesy or respect toward trial court.**

So long as counsel do not put themselves in contempt of court they cannot be disciplined for want of courtesy or disrespect towards the trial court in their briefs, though their conduct may be improper.

**2. Banks and banking ⬤⇒183—Bank held not required to refund unearned interest when note prematurely paid.**

Bank *held* not required to refund unearned interest paid in advance when note paid before maturity notwithstanding gratuitous promise of president to take matter up with directors and see if refund could be allowed.

Error from Tarrant County Court; H. O. Gossett, Judge.

Action by Paxton B. Pendery against the Fort Worth State Bank and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Alfred H. Eaton, of Fort Worth, for plaintiff in error.

Bryan, Stone, Wade & Agerton and J. C. Hyer, all of Fort Worth, for defendants in error.

COBBS, J. Plaintiff in error brought this suit in the county court of Tarrant county to recover of defendants in error the sum of $450, being the amount of the alleged unearned interest on a note due the defendant in error bank for $7,500. It was alleged that the note was given to secure a loan, and the bank deducted $600 in advance to cover interest for one year, and paid plaintiff in error in money $6,900. Subsequently, it was alleged, it was agreed by Marcus Bright, president of the bank, that if the note was paid on or about December 18, 1922, the bank would refund plaintiff in error the unearned interest so paid in advance, which at the time of payment was $400.

It is charged that plaintiff in error was

told by Marcus Bright, the president of the bank, at the time of payment, that he would be required to pay the face of the note, which he did, and thereafter look to the directors to approve a refund, and Marcus Bright verbally agreed to personally see that a refund would be made.

The defendants in error filed responsive pleadings, and denied the agency of Marcus Bright under oath, and pleaded failure of consideration.

The case was tried with a jury, and the court gave the jury special instructions, and, the answers of the jury being favorable, the trial court entered judgment for defendants in error.

[1] Defendants in error strenuously object to our considering plaintiff in error's brief, because in every essential, it is alleged, it is in violation of the rules well established for correct briefing, and further because of the want of courtesy and the disrespect shown towards the judge of the trial court. This court has no power to compel lawyers to regard the rules of good ethics in matters of this kind. As good Americans they should, and usually do, respect constituted authority, but so long as they do not permit themselves to pass the line and put themselves in contempt of court they cannot be disciplined. So, therefore, while we may agree with defendants in error in this matter, we shall let it pass without further comment. Lawyers often, in their zeal and earnestness in representing their clients, inexcusably stretch to the very limit that respect and decorum required in the treatment of the court and their opponents of the same learned profession.

[2] There was no written promise, personally, on the part of President Marcus Bright, to refund the money in case the bank refused to do so, nor was there alleged or shown any fraud or misrepresentation that induced him to part with his money. Unless there be an express agreement to refund interest paid in advance, or a provision in the obligation that it may be paid "on or before" a certain date, the written contract cannot, by parol testimony, be satisfied and discharged before its maturity without the payment of the stipulated amount with unearned interest.

The bank pleaded and denied any consideration for the agreement to refund, but alleged that the taking up of the loan, well secured, put the bank to extra trouble and expense, especially in view of the fact that they had already reported the loan to the state bank authorities at Austin, and were satisfied to let it remain for the term. It pleaded that refund of interest was contrary to its policy and custom in such cases, and no benefits could be derived from the surrender of a well-secured loan such as this one was. The bank further pleaded that to accommodate the plaintiff, its client, it even went so far as to arrange the loan, which it did not see fit to handle, with Ben O. Smith, and paid out $100 on the transfer, which was charged to expense, entirely for the accommodation of Mr. Pendery. Only after the negotiations were complete did plaintiff suggest a refund, and was told that it would be taken up with the board of directors. The offer was a gratuitous one on the part of the president, Marcus Bright, to see if the board would agree to the refund of interest contrary to their usual custom.

Plaintiff in error knew that the president of the bank was not binding himself upon any consideraton to him moving personally to refund the money, but was making it clearly known at the time that the directors of the bank had to pass on the matter, not himself. Plaintiff in error could have waited for the officers of the bank to act on the refund before making the payment, but he relied on the promise of Mr. Bright to secure it, which Mr. Bright attempted to carry out, but failed. It is elementary that "he who trusts most must lose most."

We see no theory which would have justified the court in giving any of the charges requested by appellant. There is no liability shown upon the part of the bank, for it was standing upon its legal and contractual right to collect the principal and interest up to the date of maturity. That was an express obligation upon plaintiff in error, to pay the note according to its tenor, words, and effect.

It was expressly shown that the president of the bank had no express authority to release any interest, so called, earned or unearned. Indeed, as a matter of law, he had none. He so told plaintiff in error, and plaintiff in error knew it at the time. Mr. Bright did not bind himself in any valid personal obligation to pay plaintiff in error the money. There was no consideration to him moving for any such unwritten promise, and no fraud alleged or proven practised upon plaintiff in error, that induced him to part with any money.

We think the case was fairly tried and substantial justice done. There are no reversible errors properly assigned, and the judgment of the trial court is affirmed.