RAY ALPERSTEIN, As Administratrix of the Estate of MAURICE ALPERSTEIN, Deceased, Plaintiff, *v.* NATIONAL CITY BANK OF NEW YORK, Defendant.

Municipal Court of City of New York, Borough of Manhattan, April 6, 1951.

48

*Maxwell A. Rubin* for plaintiff.

*Shearman & Sterling & Wright* for defendant.

Boccia, J. This case presents a novel issue and apparently of first impression.

Each of the parties moved for summary judgment and concedes the following facts:

On June 23, 1950, the defendant bank made a loan to plaintiff's intestate, Maurice Alperstein, by discounting his promissory note for $10,000. The loan was made pursuant to the borrower's application which is dated June 22, 1950. At the time the loan was consummated the net proceeds of $9,032.35 were paid by the bank to the borrower. The proceeds represent the face amount of the note less the discount of $891, life insurance premium of $72 and filing fees of $4.65.

The application lists various collateral in order to secure this business loan and states in part as follows: '' It is understood that the relative promissory note will permit you to deduct from the proceeds thereof a discount charge computed at the rate: (e) If the note is payable in 36 installments, of 2.97% per annum which charge is equivalent to interest on unpaid principal balances at the rate of 6.36% per annum. You are hereby authorized to (1) cause my life to be insured during the term of the loan for the amount owing at any time on account thereof; (2) deduct from the proceeds of the loan an amount per $100 of the face amount of the loan not in excess of 24¢ per annum for payment to The Prudential Insurance Co. of America for such insurance. (3) Deduct from the proceeds of the loan the fees for filing any chattel mortgage relative hereto. (4) Remit by ordinary mail the net proceeds of the loan to me.  *  *  * The estate of the Borrower and the Co-makers and/or Guarantors, if any, have the protection afforded by the insurance on the life of the Borrower by the terms of which the insurer has agreed to pay to the Bank an amount equal to that then remaining unpaid on account of the loan in the event of the death of the Borrower during the period for which the loan is made ''.

The loan application signed by the borrower on June 22, 1950, also authorizes the bank to cause the borrower's life to be insured during the term of the loan for the amount owing at any time and to deduct from the proceeds of the loan the amount of the premium paid by the bank to the Prudential Insurance Company.

When the loan was made the bank insured the life of the borrower under the bank's group indebtedness insurance policy with the Prudential Insurance Company. The insurance policy provides that the amount of insurance shall be the amount of unpaid indebtedness owed by the borrower. Upon effecting the insurance, the Prudential Insurance Company issued its certificate of insurance and stated that: "The Policy provides that, if the Borrower dies during the period for which the loan evidenced by the said note is made and while insured in accordance with the terms of the Policy, the Prudential will, immediately upon receipt of due proof of the death of the Borrower pay to the Creditor the insurance in an amount * * * equal to the indebtedness then owing (evidenced by the said note) ".

In the promissory note signed by the borrower, the borrower promises to pay to the bank the sum of $10,000 in thirty-six monthly installments of $277.78. The note likewise recites: "Upon the discount hereof by the bank, it may deduct from the face amount of this note a discount charge ", etc. and further: "In the event of the happening of any one or more of the following, to wit: (d) the death * * * of the undersigned * * * then, or at any time after the happening of any such event, this note, shall immediately become due and payable, without demand or notice and likewise upon the happening of any such event, or at any time thereafter, any or all of the other obligations shall, at the option of the bank, become due and payable forthwith without demand or notice."

After paying the first installment in the sum of $277.78 on July 22, 1950, the borrower died on August 2, 1950. On August 18, 1950, the bank received from the Prudential Insurance Company the amount remaining unpaid on the note, namely, $9,722.22. The note was marked " paid " by the bank on August 18, 1950, and returned by the bank to the plaintiff's attorney.

Correspondence ensued between the parties as a result of which the plaintiff made claim from the bank for the return of 35/36 of the discount which had been deducted from the face amount of the note by the bank in remitting the proceeds to the borrower and that as this discount was " unearned " plaintiff claims to be entitled to the return of the sum of $866.25, on the theory that the bank has been " unjustly enriched " as said unearned discount had thirty-five more months to run for which period it had deducted the interest in advance so that there was created a failure of consideration for the unexpired period of the loan.

The defendant contends that the interest it had deducted in advance was in accordance with subdivision 1 of section 108 of the Banking Law and that the plaintiff is not entitled to a recredit of any so-called "unearned discount" and that the bank is entitled to retain the entire proceeds of the life insurance in satisfaction of payment of the loan made by the plaintiff's intestate.

It is now well settled that the bank had an insurable interest in the life of the plaintiff's intestate at the time it made the loan to him and under such circumstances the bank had the right to enter into any agreement with the insurance company so that it would receive a sum of money as indemnity in case its interest in the subject matter should suffer diminution of value by reason of certain specified causes or contingencies (1 May on Insurance [4th ed.], § 6).

The bank with such an insurable interest in the borrower clearly had the right to secure itself against the death of the borrower.

Plaintiff argues that the interest on the loan was prepaid by the borrower. This, however, is not the fact as the only moneys that the borrower actually returned to the bank was the first installment although the borrower actually received from the bank $9,032.35. The plaintiff likewise contends that upon the death of the borrower the bank exercised its option to accelerate the note and that by reason of such acceleration the amount due on the note was the sum advanced and the interest accrued up to that time. I am unable to perceive how this note was accelerated. In fact, the application for the loan made by the borrower specifically recited that the borrower had the protection of the life insurance taken by the bank on the life of the borrower and the life insurance policy provided that the insurance would be applied to the discharge of the debt. Accordingly, the bank in collecting the amount due to it at the time of the borrower's death was clearly acting in accordance with the terms of its agreement with the borrower and fully complied with such agreement when it returned the note to the administratrix marked "paid."

Plaintiff continues along the same line with her argument that the insurance was taken by the borrower and that therefore the estate of the borrower is entitled to the proceeds of such insurance. This is directly contrary to the facts at hand as the insurance was taken by the bank on the life of the borrower under the bank's group indebtedness policy and the premium

therefor was paid by the borrower. This did not give the borrower or his estate any rights in the insurance proceeds other than the right to have the note discharged upon the borrower's death. Again, the plaintiff argues that the insurance policy constituted additional collateral security supplied by the borrower and that it follows that his estate was entitled to share in the proceeds of the policy as to any amount in excess of the amount necessary to satisfy the indebtedness. However, the policy in question is one of life insurance and not an indemnity, guarantee or suretyship contract. The bank, as has been previously pointed out was a creditor of Maurice Alperstein and had an interest in his life. Having insured his life it was entitled to collect the proceeds of the policy upon his death.

In the absence of an agreement, the bank was under no duty to pay anything to the borrower's estate and it affirmatively appears from all of the papers submitted in connection with this matter that no such provision exists anywhere in these papers.

The claim that the bank was " unjustly enriched " inasmuch as it collected its interest within a period of some seven weeks after it had consummated such loan is one of the elements that were taken into consideration both by the borrower and the bank at the time the borrower effected the loan and secured life insurance for the benefit of the bank.

Certainly, it cannot be said that the bank made a profit on this transaction. It surrendered $10,000 less the discount, premium and filing charges, and received back the $10,000 and as long as the borrower received everything to which he was entitled to from the bank, his estate cannot now be heard to complain that the moneys were returned to the bank prior to the stipulated period.

Subdivision 1 of section 108 of the Banking Law provides that interest may be taken in advance in the making of a loan. The amount of the loan in the instant case was $10,000 payable in thirty-six monthly installments of $277.78. The bank was therefore entitled to recover that sum upon the note regardless of the fact that the note was prepaid. (*Skelly* v. *Bristol Sav. Bank,* 63 Conn. 83 [1893]; *Pendery* v. *Ft. Worth State Bank,* 262 S. W. 857 [Tex., 1924].)

In fact in the recent case of *Feldman* v. *Kings Highway Sav. Bank* (278 App. Div. 589 [1951]) it was held that a creditor may exact a premium from the debtor as a condition of prepayment and that such premium does not constitute any violation of the law.

In providing special benefits for borrowers on small loans under subdivision 2 of section 108 of the Banking Law, the Legislature expressly provided for the refund of " the unearned portion of the interest previously deducted ". The inference is plain that loans not coming within subdivision 2 are governed by the common-law rule that the holder of the note is entitled to the face amount thereof.

In *Tobin* v. *Holmboe* (172 Okla. 546 [1935]) the Supreme Court of Oklahoma held that a creditor who had deducted one year's interest in advance, under an Oklahoma statute permitting such deduction, could make claim for the face amount of the note upon an acceleration of the note prior to the expiration of the term of the note. The court held that since the deduction of one year's interest in advance was lawful, the note was not usurious although the amount taken as discount was more than the lawful rate on the period the loan ran.

When the bank collected the proceeds of the insurance policy the debt was discharged in accordance with the bank's agreement with the borrower. (*Fehr* v. *Cawthon*, 293 F. 152 [C. A. 6th, 1923], certiorari denied 263 U. S. 720 [1924].)

The bank being the beneficiary of the policy was entitled to the entire proceeds. There is no evidence of any intention to limit the amount collectible by the bank on the insurance policy. The debtor had no right to change the beneficiary and the insurance company could pay to no one other than the bank or the bank's assignees.

The fact that a debtor and creditor relationship existed between the parties did not give the debtor the right to any of the proceeds.

The court in *Zolintakis* v. *Orfanos* (119 F. 2d 571 [C. A. 10th, 1941]) after a careful review of all the authorities concluded:

" It follows, that absent a clear, convincing and cogent expression on the part of the insured to the contrary, the designated beneficiary in a policy of insurance is entitled to the entire proceeds on maturity of the contract. There are good and compelling reasons to hold that a named beneficiary is entitled to the proceeds of a policy upon maturity, else the fundamental purposes of life insurance would be frustrated.

" It is clear, therefore, that a debtor-creditor relationship created by a loan of money from the beneficiary to the insured, creates no presumption of a limited right of recovery on the part of the designated beneficiary ". (P. 577.)

Moreover, a life insurance policy is not a contract of indemnity or guarantee or suretyship. The beneficiary can collect the full proceeds of the policy even though the debt has been partially or fully paid or the debtor has received a discharge in bankruptcy or the Statute of Limitations has run.

In *Empire Development Co.* v. *Title Guar. & Trust Co.* (225 N. Y. 53 [1918]) the Court of Appeals said: "It has been said often that every policy of insurance is a contract of indemnity. The accuracy of this statement is a question of definition. If it means that wagers are prohibited; that the insured must possess an insurable interest, it is true to-day. But if the word ' indemnity ' is given a broader sense; if it means that whatever the language of the contract the insured may recover only the precise amount of the pecuniary damage caused to him by the contingency against which he seeks protection, then it is not now and never has been the inflexible rule. An ordinary fire or marine policy is a contract of indemnity, for it is so written. (*Ferguson* v. *Mass. M. L. Ins. Co.*, 32 Hun 306; affd. 102 N. Y. 647.) But valued policies of this character may also be written and then, in the absence of fraud, the amount of the loss is immaterial. (*Sturm* v. *Atlantic Mutual Ins. Co.*, 63 N. Y. 77.) All life policies are substantially valued policies. (*Olmsted* v. *Keyes*, 85 N. Y. 593; *Rawls* v. *American Mutual Life Ins. Co.*, 27 N. Y. 282.) A creditor whose debt has been paid after he has obtained a policy on the life of his debtor may still recover. (*Ferguson* v. *Mass. M. L. Ins. Co.*, supra) ". (P. 58.)

*Ferguson* v. *Mass. Mut. Life Ins. Co.* (32 Hun 306 [4th dept., 1884], affd. without opinion 102 N. Y. 647 [1886]) contains the following language: "Besides, the stipulations of the policy have no reference to the creditor's claim upon the debtor. The policy is not in terms made collateral to the creditor's debt, as is the case in respect to fire insurance policies. But it contains an absolute contract to pay a stated sum upon the happening of a specified event, namely, the close of the life named in the policy. There being a debt at the time the policy is issued, it is then valid. It contains no condition referring to the continuance of the indebtedness. But, on the contrary, the policy evidences a flat and positive promise to pay a given sum at the termination of the life named. Death removes the last condition precedent except, perhaps, the delivery of proofs of the death. Then the holder becomes entitled to demand the sum named in the promise. Of course, in fire policies, the nature of the promise is different. That is a contract of indemnity against loss. The

nature and extent of the loss must be shown, and only to the making good of the loss is the insurer bound in the very terms of his contract. No statute has gone so far as to declare that a life policy, valid in its inception because of a creditor's interest in the life of his debtor, shall be invalid the moment the debt is paid." (P. 311.)

In *Rawls* v. *American Mut. Life Ins. Co.* (27 N. Y. 282 [1863]) plaintiff applied for and obtained insurance on his debtor's life. Plaintiff paid the original and all other subsequent premiums and he sued for the full amount of the policy. The debt exceeded the amount of the policy and at the time of the trial was still wholly unpaid. Although the Statute of Limitations had run against the plaintiff's demand at the death of the insured, judgment for the plaintiff was affirmed.

" But in the contract of life insurance it is enough that the party effecting the policy had an insurable interest, at its inception; and it is not required that that interest should continue and exist at the time of the death of the person whose life is insured, to entitle the holder of the policy to recover. Policies of insurance against fire and marine risks are properly contracts of indemnity, they are so in terms; but it is otherwise with life policies." (P. 289.)

" In the latter case [*Dalby* v. *The India & London Life Assurance Company,* 28 Eng. Law & Eq., 312 (1854)] it was held that a life policy was not in its nature a contract of indemnity, but was what it purports to be on its face, a contract to pay a certain sum in the event of death; and if made by a person having an interest in the duration of the life, it was sufficient to make it valid in point of law that that interest existed at the time of making the policy. It seems remarkable to me that any other view should be taken of the question. The contract is not to make any loss good, or to make compensation. The debt is not insured. It is an absolute contract to pay, not the amount of a loss or damage arising from a death, but a specified sum of money upon the termination of the life insured." (Pp. 289–290.)

In *Ulrich* v. *Reinoehl* (143 Pa. 238 [1891]) the defendants insured their debtor, a healthy man of forty-two years of age, in the sum of $3,000 to protect a debt of about $100. His life expectancy according to the Carlisle Tables was twenty-six years and the assessment and annual dues during such time would have amounted together with interest to $4,336.31. The executor of the debtor sued to recover from the defendants the amount received over the debt and interest and premiums paid.

The court held that defendants were entitled to the full amount of the policy although the insured had died within a few years.

And in *Olmsted* v. *Keyes* (85 N. Y. 593, 598–599 [1881]) the court said: " So a creditor may take out a policy on the life of his debtor, and the policy will continue valid although the creditor has been paid and has thus ceased to have an interest in the life of the insured."

It follows, by reason of all the foregoing, no issues of fact exist and that accordingly the plaintiff's motion for summary judgment should be denied and defendant's motion for summary judgment dismissing the plaintiff's complaint upon the merits is granted.