Jacob **STRAF**, Appellant,

v.

**COLONIAL FACTORS CORPORATION,**
Appellee.

No. 16303.

United States Court of Appeals
Eighth Circuit.

Jan. 19, 1960.

Rehearing Denied Feb. 12, 1960.

Irving Achtenberg, Kansas City, Mo., made oral argument for appellant.

James P. Tierney, Kansas City, Mo., made oral argument for appellee.

Before GARDNER, WOODROUGH, and BLACKMUN, Circuit Judges.

GARDNER, Circuit Judge.

This appeal is from a judgment in favor of appellee as plaintiff in an action brought by it to recover the balance due on some 103 separate promissory notes executed by White House Restaurant, Inc., a corporation whose entire capital stock was owned by appellant. The notes were secured by a chattel mortgage on the furniture and fixtures of a restaurant owned and operated by White House Restaurant, Inc., the maker of the notes. In addition to the chattel mortgage security, payment of the notes was guaranteed by appellant by endorsement on the back of each note as follows:

"For value received, all the undersigned endorsers jointly and severally do hereby guarantee the payment of this note and do hereby agree that upon the default in the payment of this note or any one of the notes of this series that all the remaining notes or any part thereof shall at the option of the holder or holders thereof, immediately become due and payable without notice. The undersigned endorsers jointly and severally do hereby waive presentment, demand, protest, notice of protest, non-payment or dishonor and notice of the sale of any collateral security and do hereby authorize and consent to any extensions or extension in the time or times of payment, renewals and partial payments on the within note, without notice to the undersigned."

The first 26 of these notes were paid but default was made in the payment of the note falling due February 1, 1952, whereupon appellee declared default in respect to the remaining 77 notes, thereby accelerating the due date in accordance with the provisions of the notes, and the mortgage securing same was thereupon foreclosed, at which sale the appellee purchased the mortgaged property for the sum of $1,500.00, there being no other bidders at the sale. Appellee as plaintiff then brought this action to recover from appellant as guarantor the entire balance due on all the notes guaranteed by him. Hereinafter, the appellant will be referred to as defendant and the appellee as plaintiff.

Plaintiff's complaint was in conventional form. Defendant admitted the execution of the notes and his guarantee thereof but pleaded affirmatively that the amount in controversy, exclusive of interest and costs, did not exceed $3,000.-00, that the guarantee of the notes by the defendant was without consideration, that the sale of the mortgaged property was invalid and the property sold was of a reasonable value sufficient to satisfy the debt due to plaintiff, that while the notes were executed for the aggregate sum of $6,200.00, in truth and in fact defendant loaned White House Restaurant, Inc., only the sum of $5,-000.00, and that the notes so given provided for interest at 6% per annum, resulting in provision to pay compound interest, in violation of the law of the State of New York, that the notes given by White House Restaurant, Inc., were discounted by plaintiff in violation of the law of New York and were therefore void, and that the notes were invalidated by the fact that a portion of the security for said notes was released without the consent, knowledge, or approval of defendant.

The action was tried to the court without a jury. The answer having denied that the amount in controversy, exclusive of interest and costs, exceeded the amount of $3,000.00, the court, prior to hearing the action on its merits, considered and determined this issue in favor of plaintiff and in doing so the court held that:

"From the pleadings on file, it is apparent that plaintiff, in good faith, stated a claim against defendant in excess of $3,000.00, the necessary amount in controversy, to give this Court jurisdiction over this action at the time it was commenced. Affirmative defenses such as asserted by defendant cannot convict plaintiff of a lack of good faith in asserting such claim. Defendant's contention as to the 'true value' of the property turned over to plaintiff—'rent advance'—'protest fees' —'costs of sale'—and 'attorney's fees' are all affirmative defenses which place those items of claimed credit as matters being in dispute between the parties. Neither in the pleadings nor pre-trial conference order does it appear that plaintiff concedes the validity of any such affirmative defenses. As a consequence, the jurisdiction of this Court, premised on diversity of citizenship and jurisdictional amount, is clearly present."

On the trial of the action on its merits the court held against defendant on his affirmative defenses, except that it heard testimony as to the true value of the chattels sold by plaintiff and also allowed defendant a credit of $24.30 on account of interest paid on the 26 notes paid at or before maturity prior to the commencement of the action. It then allowed credit for the actual value of the property foreclosed and for the $24.30 interest paid on the first 26 notes and then entered judgment against defendant for the balance due on the notes, including interest and attorney fees, in the sum of $3,442.28.

Defendant seeks reversal on substantially the following grounds: (1) the court erred in refusing to find as a matter of law that the notes are void and unenforceable as a violation of the New York statutory prohibitions against the discounting of notes by non-banking cor-

porations, (2) the court erred in refusing to make the following fact findings: (a) that Colonial Factors Corporation is not organized under the banking laws of the State of New York, (b) that the factoring fee of $1,200.00 exacted by Colonial Factors Corporation was a charge of interest, (3) the court erred in failing to credit defendant, as guarantor of the notes, with the sum of $355.00 applied by plaintiff on rent payments, (4) the court erred in allowing attorney fees in the amount of $317.-35, (5) the court erred in both charging defendant with interest on the balance due on the notes and refusing to credit defendant with the $1,200.00 factoring fee, and (6) the court erred in refusing to dismiss the plaintiff's complaint for want of jurisdiction since the amount actually in controversy, exclusive of interest and costs, is less than $3,000.00.

■■ We shall first consider the contention that the trial court was without jurisdiction because the amount in controversy, exclusive of interest and costs, was less than $3,000.00. The amount in controversy is ordinarily to be determined by the allegations of the complaint rather than the amount that may actually be recovered. It is generally held that where the complaint specifically alleges an amount in controversy, exclusive of interest and costs, in excess of $3,000.00, that is sufficient to confer jurisdiction on the court unless the allegations are made in bad faith. The trial court considered this question prior to trial of the action on its merits and found that the allegations in the complaint showing the amount in controversy were made in good faith. The general rule is stated in 36 C.J.S. Federal Courts § 310(d) (2), p. 537, as follows:

"Primarily the amount in controversy must be determined from the initial pleading. Unless the law gives a different rule the specific amount demanded or claimed in good faith by plaintiff in an action on a money demand or sounding in damages, or the alleged value of the property or right involved, is, in the first instance, regarded as the amount in dispute for jurisdictional purposes, even though the existence of a valid defense is apparent from the complaint itself, or is pleaded by defendant * * *."

In determining this question we need not consider the defenses urged and we accept the finding of the trial court that the allegations as to the amount in controversy as disclosed by plaintiff's complaint were made in good faith.

The transactions giving rise to this litigation occurred in the State of New York and it is agreed that their validity is dependent upon the law of that state. Based upon statutes of the State of New York, cited as New York Banking Law, McKinney's Consol.Laws, C. 2, Sec. 131, Sub. 1, and New York General Corporation Law, McKinney's Consol.Laws, C. 23, Sec. 18, defendant contends that the notes in controversy are void and unenforceable because plaintiff was a non-banking corporation. It is his contention that the statutes of New York in effect at the time of the loan prohibited non-banking corporations from making such discounts and declared the notes involved in such transactions to be void. Sec. 18 of the General Corporation Law, supra, however, so far as here pertinent, reads as follows:

"No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this state or of the United States, and except as therein provided shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking; * * * provided further that engaging in the business of loaning money in this state on bonds, notes or other evidences of indebtedness, secured by

deeds of trust or mortgages upon real property or personal property situated in, upon or appurtenant thereto, and/or purchasing of or otherwise acquiring existing bonds, notes or other evidences of indebtedness, deeds of trust or mortgages of or upon such properties, or any interest therein, and the holding of the same, or the endorsing, selling, assigning, transferring or disposing of the same to another corporation, by a domestic business corporation, or by a foreign corporation which has obtained from the secretary of state a certificate authorizing it to transact business in this state, shall not be deemed or construed to violate any of the provisions of the banking law."

Defendant relies strongly on Miller v. Discount Factors, Inc., 1 N.Y.2d 275, 152 N.Y.S.2d 273, 135 N.E.2d 33. However, in the Miller case the notes involved were not secured by mortgage. In Antipyros Co. v. Samuel Breiter & Co., 8 Misc.2d 310, 165 N.Y.S.2d 976, 977, affirmed 4 A.D.2d 941, 167 N.Y.S.2d 1002, the court, in holding the discounted notes secured by mortgage taken by a non-banking corporation valid, distinguishes the Miller case. In the Antipyros case, plaintiffs were the corporate maker and the individual guarantor of promissory notes. The action in the Antipyros case was "brought for a judgment declaring chattel mortgages and promissory notes, as well as the guarantee of the individual plaintiff, to be void and invalid." To like effect is the decision in Amherst Factors, Inc. v. Kochenburger, 4 N.Y.2d 203, 173 N.Y.S.2d 570, 149 N.E.2d 863, affirming 4 A.D.2d 745, 164 N.Y.S.2d 815, 817, wherein it is said, inter alia:

"In our opinion, the transaction came within the exception, and the notes and mortgage are enforceable."

In New York Credit Men's Adjustment Bureau v. Samuel Breiter and Co., 2 Cir., 253 F.2d 675, 677, the U. S. Court of Appeals for the Second Circuit, in a very exhaustive opinion, reviews the decisions of New York bearing on the question here involved. That Court sustained the validity of notes discounted by a non-banking commercial lender under circumstances not unlike those existing in the instant case. In the course of that opinion it is among other things, said:

"Regardless of the wisdom of not allowing recovery against the maker or endorser on an unsecured loan where the lender has charged a flat sum included in the face of the note for the cost of the money in place of charging at a percentage rate, such a distinction loses all validity in the case of a secured transaction. * * * Appellant argues that the exception in section 18 merely permits the making of non-discounted loans and that 'It had nothing to do with separate and distinct banking power to make "discounts" on such loans in violation of the Banking Law.' But a corporation 'engaging in the business of loaning money' on secured evidences of indebtedness would in the normal course of business make loans to which interest and other charges would be added. There would appear to be no reason for engrafting onto this exception a restriction prohibiting the expression of interest and other charges in a lump sum and within the face amount of the note. Such a transaction would not fall within the category of a discount even though the amount received in relation to the note given might be the same. Appellant's argument is not a new one, and has already been presented to and rejected by New York courts. Amherst Factors, Inc. v. Kochenburger, 1957, 4 A.D.2d 745, 164 N.Y.S.2d 815; Williams-Dexter Co. v. Dowland Realty Corp., supra. [259 N.Y. 581, 182 N.E. 189]. * * * The exception in section 18, enacted in 1935, merely codified the existing law on secured transactions. Prior case law made no distinction between real or personal property as security (Pratt v. Eaton,

supra [79 N.Y. 449]; Duncomb v. New York H. & N. R. Co. 84 N.Y. 190), and upheld the validity of secured loans even where the notes had been discounted. As the court noted in Antipyros Co. v. Samuel Breiter & Co., Inc., 1957, 8 Misc.2d 310, 165 N.Y.S.2d 976, affirmed 4 A.D.2d 941, 167 N.Y.S.2d 1002, in holding that discounted notes secured by a chattel mortgage were not void, there can be no rational reason for drawing a distinction based upon the type of security underlying the notes. * * * In Amherst Factors, Inc. v. Kochenburger, supra, * * * the precise reason given by the Appellate Division for enforcing the discounted notes as well as the security was that 'the guarantee and mortgage were executed simultaneously with the making of the loan and discount and as part of a single transaction.' So here the notes, made at the same time as the loan and mortgage, merely evidenced the total amount due, consisting of principal, interest and charges, and fixed the dates of the various installment payments. Thus they, too, were a 'part of a single transaction.' While the transaction in the Amherst Factors case involved real property security, as pointed out above, no different result should be reached where the security is personalty (Wolf v. Aero Factors Corp., supra [D.C., 126 F.Supp. 872]; Antipyros Co. v. Samuel Breiter & Co., Inc., supra).

"For years the practice of lending money against security has been carried on by non-banking institutions. Naturally, where loans are made to companies of questionable financial standing, as is so evident here, the risks are great and the lender will exact high interest and impose other charges. But whether the interest is added in advance or is called a discount affects neither the interest rate nor the morals of the transaction."

We are in accord with the views expressed by the Court in New York Credit Men's Adjustment Bureau v. Samuel Breiter and Co., supra. The notes here in question are valid and enforceable.

Defendant sold the mortgaged property under contract and ceased to have management or control thereof. Following this change a fire occurred, damaging the property which was covered by insurance. The fire loss was adjusted by the payment of $450.00 in the form of a check to White House Restaurant, Inc. and plaintiff. Plaintiff received the check with a written authorization from the manager of White House Restaurant, Inc. to apply the funds to rent. Of this amount, $355.00 was paid as rent on the building in which the chattels were located and the balance applied to reduce the indebtedness. It is the claim of defendant that this resulted in a partial release of the collateral security. We cannot agree. As said by the trial court:

"Upon receipt of Exhibit 3 by plaintiff, plaintiff was entitled to apply the proceeds of the remittance made therein in accordance with the instructions of White House Restaurent, Inc. Assuming that the check forwarded to plaintiff represented the proceeds of insurance * * * and that by the provisions of the chattel mortgage plaintiff had an interest in such proceeds, yet plaintiff could have accepted such check, payable as it was to the parties jointly, and applied the proceeds thereof as agreed between them, without in anywise releasing defendant on his guarantee. Defendant did not guarantee the payment of the mortgage debt according to the terms of the chattel mortgage, Plaintiff's Exhibit 1. His guarantee was to the 'payment of this note' which we hold is a valid obligation under New York law."

It is contended that defendant as endorser and guarantor of the notes did not thereby become liable for attorney fees. As has been observed, his guaran-

tee was for payment of the note and the note provided for the payment of attorney fees under certain conditions. The obligation of the guarantor was the same as that of the maker of the note. Cross v. Rosenbaum, 7 Misc.2d 309, 161 N.Y.S.2d 337, 338; Townsend v. Alewel, Mo.App., 202 S.W. 447; 7 Am.Jur. 868, Bills and Notes, Sec. 141. The rule is succinctly stated in Cross v. Rosenbaum, supra, where it is said:

> "The liability of the guarantor is measured by that of the principal and will be so construed, unless a smaller or greater liability is expressly assumed by the guarantor."

 It is urged that the court erred in allowing interest on the unpaid notes. No interest was calculated on these notes before due. They were all properly declared due on default and the charge of interest after maturity did not, as a matter of law, amount to the collection of interest upon interest. As pointed out by the trial court:

> "The Court declares the law to be: * * * The notes here in suit, providing for the payment of a specified sum on a due date and 'value received with interest at 6%' should be construed to provide for the payment of interest from due date of each note, so that the notes may not savor of usury or the payment of interest on interest."

As has been observed, upon default on any note all the unpaid notes matured and became immediately due and payable. The entire debt was liquidated upon such default on February 1, 1952, and began drawing interest from that date at the rate of six per cent, as computed by the trial court, even if under the applicable New York law, the factoring fee be deemed a prepayment of interest to maturity. Alperstein v. National City Bank of New York, 201 Misc. 47, 103 N.Y.S.2d 930.

We have given consideration to all other contentions urged by defendant but think them without merit. The judgment appealed from is therefore affirmed.