D. JEROME WALKER, Plaintiff, *v.* GEORGE B. WALBRIDGE, Defendant.

Supreme Court, Erie County, May 3, 1934.

*Saperston, McNaughtan & Saperston* [*Richard H. Wile* of counsel], for the plaintiff.

*Moot, Sprague, Brownell, Marcy, Carr & Gulick* [*Joseph P. Jordan* of counsel], for the defendant.

HARRIS, J.   The complaint herein sets forth an alleged cause of action on a note of which note the following is a copy:

" $3,248.00                    CHICAGO, ILLINOIS, *April* 2, 1931.

For value received (to-wit, the payment, in whole or in part of the first premium on the life insurance policy or policies hereafter described) I promise to pay to the order of C. W. Colgrove System, Inc., the principal sum of three thousand two hundred forty-eight and no/100 dollars at the times and in the manner following:

| | | |
|---|---:|---:|
| " Three months after date............................ | $ | ...... |
| Nine months after date............................ | | ...... |
| Fifteen months after date.......................... | | ...... |
| Twenty-one months after date...................... | | ...... |
| Twenty-seven months after date.................... | | ...... |
| Six months after date............................. | $649 | 60 |
| Twelve months after date.......................... | 649 | 60 |
| Eighteen months after date........................ | 649 | 60 |
| Twenty-four months after date..................... | 649 | 60 |
| Thirty months after date.......................... | 649 | 60 |

"All amounts are payable at the office of said C. W. Colgrove System, Inc., 110 South Dearborn Street, Chicago, Illinois, or at such other place or places as may, from time to time, be designated

by the legal holder hereof; all unpaid balances shall draw interest at the rate of six per cent (6%) per annum, payable semi-annually.

" All unpaid balances, payable pursuant to the terms of this note, shall, notwithstanding any due date specified herein at the election of the holder hereof, become immediately due and payable in any of the following circumstances: (A) Should the undersigned depart this life prior to the maturity of said indebtedness or any part thereof; (B) In case of default in any of the provisions or agreements contained in this note, or; (C) Should the undersigned fail to pay, on or before its due date, any premium upon said policy or policies. All costs of collection and Attorney's fees shall be added to the principal obligation and shall be paid by the undersigned. Subject only to the claim of the Life Insurance Company, itself, theretofore lawfully made under said Policy or Policies, in accordance with the terms thereof, the indebtedness represented by this note shall, from and after the date hereof, be the first, prior and paramount claim upon and to any and all proceeds, issuing in any manner whatsoever, out of said Policy, under any of its terms, as against all persons whosoever, whether claiming under or adversely to the insured. *Out of said proceeds, there is hereby assigned to the holder hereof, an amount sufficient to fully pay the obligation hereunder of the undersigned; the Beneficiary Trustee is hereby directed, out of the proceeds coming into its hands, to first pay and discharge said obligation, before distributing the balance, under the terms of the Beneficiary Trustee contract. The Insurance Company, however, is fully authorized and empowered to make payments of this policy to the Beneficiary Trustee, named in this policy. Such Beneficiary cannot be changed prior to the payment of this obligation in full, nor prior to the time fixed in the Beneficiary Trustee contracts, to which reference is hereby made.* Said C. W. Colgrove System, Inc., and/or the legal holder hereof is hereby irrevocably made and constituted Attorney-in-fact of the undersigned to apply for and to receive and collect all loan values, cash surrender values, coupons and dividends payable under said policy or policies upon the maturity of this obligation, whether by default or otherwise. The overplus, if any, realized from said policy or policies shall be paid to the undersigned, his heirs, executors, administrators or assigns. So long as any part of this note is unpaid, the undersigned shall not, without the written consent of the holder hereof, cancel nor surrender said insurance. The holder hereof may, at its or his option, prior to full payment hereof, pay any amount necessary to maintain said insurance in force. Any such amount shall be repaid, by the undersigned, to the holder hereof, upon demand, together with interest at the rate of six per cent per annum. All

of the terms hereof shall inure to and be binding upon the transferees or assigns of said C. W. Colgrove System, Inc.

" (Signed)   GEORGE B. WALBRIDGE

" 718 Walbridge Bldg., Buffalo, N. Y. Address

" Description of Policies Above Referred to.

| Policy number | Amount of policy | Name of Insurance Company |
|---|---|---|
| 1068030 | $100,000.00 | Union Central Life Ins. Co. |

" Endorsements on Back:

" C. W. Colgrove System, Inc.
      By C. W. Colgrove, Secy.
            C. W. Colgrove."

The defenses attacked on the original motion herein allege in effect that the above-described note was a part consideration for a certain contract which contract is as follows, and is hereinafter referred to as the contract (as distinguished from the note sued on herein and from the policy of insurance).

" Membership Agreement

" Three Copies to be Executed

" Original for Trustee
   Duplicate for Insured
   Triplicate for C. W. Colgrove System, Inc.

" Mutual Estate Association No. ———.

" The undersigned subscriber in consideration of like agreement by not more than ninety-nine (99) other subscribers to multiplicate copies hereof, hereby agrees that The Union Bank of Chicago, Chicago, Ill., shall be the beneficiary Trustee for the first five (5) years (without any right during said five years on the part of the undersigned to change the beneficiary) of the life insurance policy, or policies, hereafter described, issued by the same or different insurance company, or companies, on the life of the subscriber hereto, subscriber hereby agreeing to maintain said insurance in force for not less than five (5) years, unless same shall mature as a death claim prior thereto.

" In the event any of said insurance matures as a death claim within five (5) years of its date of issue said Trustee shall administer the proceeds thereof received by it, as follows:

" *First.* The Trustee shall first pay in full any indebtedness due in accordance with the terms of any note made by the subscriber hereto payable to C. W. Colgrove System, Inc., or the legal holder thereof, provided due notice of such note shall have been given prior thereto to the Trustee in writing. It is clearly understood, however, that only notes delivered for premiums upon the policy

or policies hereafter described fall within the purview of this provision.

" *Second.* The Trustee shall then administer such part of said proceeds as shall be equivalent to twenty-five (25) per cent of the full amount of said insurance for the benefit of the surviving subscribers to multiplicate copies hereof in the following manner, to-wit:

" The Trustee shall forthwith divide said amount into shares for the benefit of each of the subscribers then surviving, the amounts of said shares to be computed and based upon the proportion that the first year's premium on the insurance of each subscriber bears to the total aggregate first year premium of all such surviving subscribers, provided, however, that in the event any subscriber, then surviving, shall have failed to maintain the insurance, previously existing on his life, such subscriber shall not be included among the then surviving subscribers, who shall be entitled to the benefit of any of the proceeds of this agreement, and all further rights of such subscriber under this agreement shall forthwith terminate, unless such subscriber shall have previously thereto, reinstated said insurance on his life, in accordance with the term of this agreement, in any amount aggregating not less than the total of such insurance hereafter described. The Trustee shall have the right to rely upon the statements of the respective insurance companies as to which of the surviving subscribers are, or are not, in good standing. The Trustee shall thereupon forthwith apply said shares so set apart for the benefit of such subscribers, in the payment of any indebtedness then existing upon any notes made by such subscribers respectively, payable to said C. W. Colgrove System, Inc., or legal holder thereof, provided due notice of such indebtedness shall have been given prior thereto to the Trustee in writing; and the Trustee shall forthwith pay the remainder of said shares or all of said shares, if no such indebtedness then exists, to the insurance companies who issued the policies, then existing on the lives of such survivors respectively, to be held and applied by such respective insurance companies toward the payment of the premiums on the insurance policies hereafter described and then existing on the lives of such survivors, respectively, as such premiums may thereafter fall due.

" *Third.* The balance of said proceeds shall be paid to such beneficiary or beneficiaries as shall have been duly designated by the subscriber to receive same. Such designation shall be in the form of a written statement, signed by the subscriber (and his signature duly witnessed) and filed with the Trustee herein and accepted by it. Should the subscriber designate a Trustee as beneficiary, then an executed certified copy of the Trust agreement

entered into between such Trustee and the subscriber shall be filed with the Trustee herein before such designation shall be valid. The subscriber shall have the right at all times during the existence of this agreement, to change the beneficiary theretofore designated by him, by filing with the Trustee herein a notice of revocation of such beneficiary and designation of a new beneficiary, provided such notice be in writing, signed by the subscriber (and his signature duly witnessed) and accepted by the Trustee herein. In the absence of any such designation of beneficiary or beneficiaries by the subscriber, the Trustee herein shall forthwith pay over, deliver and convey the balance of said proceeds to the personal representative of the estate of the subscriber to be held and disposed of by such representative as provided by law.

" It is contemplated by the organizers of this association that insurance policies will be issued to a total of one hundred (100) subscribers hereto; it being expressly understood, however, that, if there be less than one hundred subscribers, nevertheless, this contract and all other participating contracts, multiplicate copies hereof, delivered to said Trustee, as herein provided shall continue in full force and effect subject to all the rights and obligations herein declared.

" This agreement shall be effective only as to such subscribers whose executed contracts, multiplicate copies hereof, shall be deposited with said Trustee, and then only for the benefit of such subscribers for whom insurance shall be obtained and policies exhibited to said Trustee. It is expressly understood that from and after five (5) years from the date of issue of any policy no restrictions whatever shall exist as to change in beneficiary, and no beneficial interest shall inure to the benefit of any person other than such persons designated by the respective subscribers to be the specific beneficiaries of said policies; provided, that if any of such proceeds shall be received by the Trustee in the event the subscriber shall die at any time after said five (5) year period all of such proceeds shall be distributed in accordance with the provisions of Paragraph Third above.

" The duty and responsibility concerning the payment of premiums and other charges on said policies during the lifetime of the subscribers shall rest solely upon the subscriber, and the Trustee shall be under no obligation whatever with respect to said policies during the lifetime of the subscriber. Upon the death of any subscriber the Trustee shall, upon the receipt of the policy or policies upon the life of such subscriber, collect the net proceeds of said insurance policies then payable to it as Trustee under this agreement, and is authorized to do all things necessary thereto.

The Trustee shall not, however, except at its option, maintain or enter into any litigation unless it shall have been indemnified to its satisfaction against all expenses and liabilities which it may incur in such action. In the event the Trustee shall not collect such proceeds or commence litigation to enforce the payment thereof within sixty (60) days after the death of any subscriber, the remaining subscribers hereto, or any one of them for the benefit of all of them, shall have the right to bring an action against the insurance company to collect such proceeds as beneficiaries under this agreement.

" The Trustee, either individually or as Trustee, makes no representations whatever concerning any insurance company or any policy of insurance issued under this agreement, and none of the statements or representations made in this agreement are made by the Bank, either individually or as Trustee. The Trustee shall reimburse itself for its fees and any and all expenses, including attorney's fees, in any way arising out of or in connection with this agreement, out of the proceeds of any insurance policies which may be paid to it hereunder and shall not be required to invest any of such proceeds.

" Any Trustee may resign as Trustee hereunder at any time upon written notice to the undersigned subscriber sent by United States registered mail, postage prepaid, addressed to the subscriber at the address noted on this agreement, and such resignation shall be effective sixty days after the date of the mailing of such notice. In event of such resignation a successor Trustee shall be appointed by any two members acting jointly; in such appointment, the subscriber hereby authorizing and ratifying such appointment.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*" Signature of Member*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*" Address of Member*

" THE UNION BANK OF CHICAGO, Chicago, Ill., as Trustee.

By. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" Policy No            Amount

Date            Amount Premium

Name of Company          ᐧ   "

It is not disputed that the payment promised by the defendant herein to the predecessor in interest in such note of the plaintiff herein is for indebtedness mentioned in the contract. By his defenses the defendant claims that the contract was at the time of its execution and delivery and now is a wagering contract and,

therefore, the note on which suit is brought is illegal and void as being given in violation of public policy. The purported indebtedness covered by such note and described in the contract was a premium of insurance on the life of the defendant herein which insurance was issued by the Union Central Life Insurance Company in the amount of $100,000. The contract has been passed on by the Supreme Court of the State of Illinois (*Colgrove* v. *Lowe*, 343 Ill. 360; 175 N. E. 569). That learned court held that a similar agreement was null and void because it was a wagering contract and contrary to public policy of that State. The Supreme Court of Illinois did not pass on the validity of the insurance issued in connection with such contract nor on the enforcibility of indebtedness for the premium of such insurance. In order to dispose of these motions, it is necessary that this court pass on the legality of the insurance, the contract and the note.

The principal ground on which the transaction, of which the insurance policy, the contract and the note were a part, is attacked as a gambling transaction is that the ninety-nine persons who are named as possible beneficiaries of the policy have no insurable interest in the life of the defendant herein and the insured named in such policy and contract. It is well-settled law that if the beneficiary named in a policy has no insurable interest in the life of the person insured, then the transaction is a wagering one and void as against public policy, unless the insured has selected such beneficiary. (*Reed* v. *Provident Savings Life Assurance Society*, 190 N. Y. 111.) The plaintiff asserts that the contract under discussion herein and the insurance policy issued in connection with the same are valid within the rule of the *Reed* case. This court is of the opinion that the *Reed* case is no authority for sustaining the validity of such policy and contract. In the *Reed* case the insured selected a definite beneficiary known to himself and presumably selected somebody who would have no interest in the unnatural shortening of his own life. In the case at bar the beneficiaries are not selected by the insured, but may be any ninety-nine other persons who desire to gamble on the length of the lives of themselves and their associates, including the defendant herein. Thus we have a case where any one of these ninety-nine persons, evilly minded, would have an incentive to shorten the life or lives of some or all others of the one hundred insured so that the person so inclined could benefit under the one hundred policies. It is in view of situations akin to this that the courts have declared it against public policy to insure the life of a person for the benefit of someone who has no insurable interest and who is not selected by the insured with caution for his own safety.

On the question of insurable interest, it is fitting to quote the late Mr. Justice FIELD of the United States Supreme Court, who in *Warnock* v. *Davis* (104 U. S. 775) spoke as follows: " It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and the wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful — as operating more efficaciously — to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured," and to bear in mind in defining an insurable interest that the late Mr. Justice BRADLEY of the United States Supreme Court said (*Connecticut Mut. Life Ins. Co.* v. *Schaffer*, 94 U. S. 457): " It may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life." Applying these tests as to what is insurable interest, this court comes to the conclusion that the other ninety-nine persons of the one hundred persons referred to in the contract and made the beneficiaries of the policy have no insurable interest in the life of defendant herein and he has no insurable interest in their lives and, therefore, the transaction which included such policy and contract is void as being part of a wagering contract and against public policy.

The remaining question before the court is whether the note on which this suit is brought is enforcible in this State. The contract and such note by their terms show that they were made in this State. This court is of the opinion that such note, contract and the insurance policy are all parts of one agreement and, therefore, inseparable. The provisions of the note show that it was given and accepted while the payee therein had full knowledge of the contents of such contract. A contract made to provide

consideration for a gambling transaction is not enforcible in this State. (See *Ruckman* v. *Bryan*, 3 Den. 340, and citations therein; 1 Clark N. Y. Law of Cont. § 603; Penal Law, § 992.) As has been indicated before, the note is part of the transaction and was given as a consideration for at least part of the premium of the policy and having held that the contract and the policy are void, it necessarily follows that such note is void.

The plaintiff herein contends that even though the policy, contract and note are each and all void, still he has a right to show that he is a holder in good faith of such note and, therefore, entitled to recover thereon.

This court holds that the plaintiff herein cannot plead and recover on the theory of good faith because mention of the contract itself made in the note sued on was sufficient to put the plaintiff on notice when he took the note even if he took it for value, and there is another reason for holding that the plaintiff does not stand in any better position than the original payee of the note. A holding that the note is void means that it was void in its inception. Being without life and force originally, certainly its transfer did not awaken any life or force in the note. (*Larschen* v. *Lantzes*, 115 Misc. 616; *Sabine* v. *Paine*, 223 N. Y. 401).

The motions of the plaintiff herein are denied and the defendant herein may have an order dismissing the complaint.