Egbert 0. Brink, J.
This is a motion pursuant to rule 113 of the Buies of Civil Practice, in which the defendant, Nationwide Mutual Insurance Company moves for summary judgment against the plaintiff, Merl W. Holmes.
On May 31, 1957, two ‘ ‘ travel accident ’ ’ policies in the total amount of $10,000 were issued by the defendant to the plaintiff, as beneficiary on the life of Leon H. Stoddard, the brother-in-law of the plaintiff. The affidavit of plaintiff’s attorney, and the examinations before trial of the plaintiff and the insurance agent, Ugo J. Cianciosi, indicate that a loan had been made by Holmes to his brother-in-law, Stoddard, for the purpose of financing the medical education of plaintiff’s nephew, the son of Leon H. Stoddard. The insurance agent had suggested the policies to the plaintiff. The affidavit of plaintiff’s attorney indicates that prior to making the application for the policies, the plaintiff *895 discussed Ms intention to do so with Mr. Stoddard, the named insured. This is not denied in the defendant’s moving papers.
From the inception of the policies on May 31, 1957, until the death of the insured on or about May 7, 1961, in a motor veMcle accident, the plaintiff paid to the defendant an annual $5 premium for each policy. Typed on the face of the policies is the name of the beneficiary and his relationship, that of brother-in-law. These policies were forwarded to the company by the agent.
The insurance agent admits that he did not inform the plaintiff that there was a statutory requirement that the written consent of the insured be obtained, because he was unaware of such a requirement.
After the death of the named insured, plaintiff made application to the defendant for the proceeds of the policies. Thereafter, the defendant notified the plaintiff, for the first time, that because the plaintiff had failed to file a written consent of the named insured at the time of issuance of the policies, pursuant to subdivision 3 of section 146 of the Insurance Law, the policies were void, and the defendant refused to pay the face amounts of the policies and offered to return the premiums.
The defendant argues that the policies were void in their inception since there was neither an insurable interest or a written consent by the insured, as required by section 146 of the Insurance Law. The statute, the defendant argues, reflects the public policy of Few York State, against wagering on human lives, and since the statute was enacted neither for the benefit of the plaintiff nor the defendant, the principles of waiver and estoppel have no application.
The plaintiff, in his papers, indicates that there was an insurable interest in the plaintiff since he was a creditor of the insured. He further argues that the course of conduct of the defendant was such, in soliciting application of the policies, in issuing the policies with full and complete knowledge of the relationsMp between the plaintiff and the named insured, in receiving and retaining premiums, and in failing to notify plaintiff of any required written consent, that notwithstanding the lack of written consent, an estoppel arises against the company prohibiting the raising of the defense of the invalidity of the policies.
There is clearly a question of fact raised as to the existence of an insurable interest by the plaintiff in the life of the insured. Therefore, the remaining issue is whether the conceded lack of written consent voids the policy, or whether the principle of estoppel can be applied against the insurance company.
*896 Subdivision 3 of section 146 of the Insurance Law in force at. the time of making the contracts states: “No contract of insurance upon the person * * * shall be made or effectu-
ated unless at or before the making of such contract the person insured, being of lawful age or competent to contract therefor, applies therefor or consents in writing to the making thereof ” (emphasis supplied).
The court has been referred to no case which discusses the issue of consent under the above statute in New York. It may be generally stated that the reasoning behind legislation requiring an insurable interest and consent of the insured is in furtherance of the public policy against wagering or gambling on human lives. This policy has been adopted in most jurisdictions to prevent speculation in human life, since the incentive to shorten the life of the insured would be increased. (44 0. J. S., Insurance, § 243.) Where, however, there is an interest based on familial love and affection or a pecuniary interest, on the life of the insured, the element of wager is decreased.
Since the requirement of insurable interest is based on public policy, many courts hold that waiver or estoppel will not serve to bar the defense, although there is authority to the contrary. (Vance, Insurance [3d ed., 1951], § 31, p. 199; 44 C. J. S., Insurance, § 212, p. 915.) A similar reasoning is often applied in the case of consent of the insured. The cases argue that the policy against wagering will be better fulfilled by requiring the consent of the insured, as well as an insurable interest. (Vance, Insurance, § 34, pp. 207-208; 56 L. R. A. 585.)
However the requirement of consent in the making of a valid policy is not as essential as that of an insurable interest. For example, Edwin Patterson, the authority on insurance, has argued in volume 18 of Columbia Law Review (p. 406) as follows : “ If the cestui’s consent is not a sufficient, is it a necessary condition to the validity of the policy? If the analysis made above is correct, the consent of the cestui is only one of the circumstances which will reduce the harmful tendencies of life insurance to a negligible minimum; and where the beneficiary has an insurable interest, the consent of the cestui is immaterial. Aside from the analytical argument, the matter is of some practical importance. For instance, if the consent of the cestui is necessary, an infant’s life could not be insured.” (Grattan v. National Life Ins. Co., 15 Hun 74 [1878].) (See 56 L. R. A. 590.)
The Insurance Law does not state specifically that the violation of .section 146 will deprive the parties of their rights. Not every contract which violates a statute is for that reason unen *897 forcible. (Government of French Republic v. Cabot, 190 Misc. 517 [Supreme Ct., N. Y. County, 1947] citing Rosasco Creameries v. Cohen, 276 N. Y. 274, 278 [1937]): “Illegal contracts are generally unenf orcible. Where contracts which violate statutory provisions are merely malum prohibitum, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied.” (See 5 Williston, Contracts [2d ed.], § 1630, pp. 4562-4564.)
Granting the importance of a policy against wagering with insurance contracts, where an individual case arises in which an insurable interest is present, and the facts fail to show that the policy was taken as a wager, although the policy lacks a written consent, then, in the absence of clear statutory language invalidating the contract, this court is not of the opinion that public policy demands an automatic invalidation of the insurance policy.
In Twin City Co. v. Harding Glass Co. (283 U. S. 353, 356-357 [1931]) the United States Supreme Court said: “ The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that doctrine rests.”
Since the major protection afforded the insured is that of the existence of an insurable interest, in the life of the assured, the lack of written consent (there is evidence that the insured was consulted orally before the policy was issued) is merely an incident of the public policy and does not go to the heart of it.
There is also authority indicating that a contract or policy of insurance delivered in violation of statute is binding and valid as against the insurer issuing the same. (Posner v. United States Fid. & Guar. Co., 33 Misc 2d 653 [Supreme Ct., Sullivan County, 1962] and cases cited therein.)
The above analysis is particularly sound where there are conflicting public policy issues. As the court said in Crosswell v. Connecticut Ind. Assn. (51 S. C. 114, 116-117): “ It is surely not a sound policy to permit insurers to contract to insure the lives of persons, receive premiums therefor as long as the * * * beneficiary * * * will continue to pay, and then, when the time comes for the insurers to pay what they agreed to pay, allow them to escape their contract on the ground of want of insurable interest in the life insured, unless it clearly appears that such contracts are pernicious and dangerous to society.”
*898 To permit the defendant to use the defense of invalidity in this case, when it had notice that the beneficiary was a brother-in-law, when it received the premiums for four years without notifying the plaintiff of the necessity for written consent, and then after the event insured against occurred, to deny any liability on the policy is shocking to this court’s sense of justice.
The limitation of insurable interest is a substantial safeguard against wagering. A statutory consent requirement is a very slight deterrent. Consent of the insured can easily be obtained as a favor or for a slight consideration. Where there is an insurable interest, there is usually a close relationship between the insured and the applicant. The danger of foul play to the insured may not be any greater without the consent of the insured to the contract than with it. Public policy usually is not related to the remotest of contingencies.
In the absence of an estoppel situation, a statutory written consent requirement may serve some useful purpose particularly under circumstances where the applicant has made false representations as to his insurable interest in the insured. How- ■ ever, such a statute should not serve the purpose of aiding insurance carriers in avoiding liability on insurance contracts when performance of the applicant has been accepted with full knowledge of the insurance carrier of the risk involved and where the facts are incidental thereto.
The Court of Appeals of New York has held that where an insurance company has by its conduct induced a person to enter into a contract of insurance, thereby giving it an advantage, it would he against equity and good conscience to permit it to assert such advantage. To permit an insurance company to accept the payment of premiums on a policy which it knew when issued was void from its inception, would constitute a fraud on the policyholders. (Lampke v. Metropolitan Life Ins. Co., 279 N. Y. 157 [1938].) This same principle must prevail where the company had facts within its control which should have put it on notice of a possible invalidity. (See, also, Rothschild v. Title Guar. & Trust Co., 204 N. Y. 458 [1912].)
To hold that an estoppel in this type of situation cannot be raised, would be to place a premium on ignorance. It would he advantageous to insurance companies to keep their agents in the dark on matters of statutory policy, and then, in the event of the contingency occurring which has been insured against, raise the statutory policy to avoid liability. This is a perfect case for the equitable doctrine of estoppel. No fraud has been alleged by either party. It is simply a case of the plaintiff having been lulled into a false sense of security, and relying to its *899 detriment. Had the defect been pointed out by the company, it could have been cured during the lifetime of the deceased.
The case of Delouche v. Metropolitan Life Ins. Co. (69 N. H. 587 [1899]) is in accord with this analysis. There the court held that the insurance company was chargeable with their agent’s knowledge of the situation and therefore, policies issued through his instrumentality were valid and subsisting contracts as against the company (although they violated company by-laws) and in favor of the assured, who innocently relied upon the agent’s representations.
One New York case has held that an insurance company can be estopped to assert that a policy is void because of the violation of the by-laws of the company requiring an insurable interest. (Smith v. People’s Mut. Benefit Soc., 64 Hun 534 [1892]; see, also, Wall v. Metropolitan Life Ins. Co., 239 App. Div. 560 [2d Dept., 1933].) This appears to be the New York rule, as well as the rule in many other jurisdictions. (Ann. 175 A. L. R. 1284 ; 2 Appleman, Insurance, § 761.)
Even more must the principle of estoppel apply when an insurable interest is present, and only written verification of consent is missing.
The court has been referred to no New York case which holds that an estoppel cannot be raised where written consent has not been given. The closest case in point, Fulton v. Metropolitan Life Ins. Co. (1 Misc. 478 [City Ct. of New York, 1892], affd. 4 Misc. 76 [1893]) held that the signature of the insured might be waived. Demarco v. Metropolitan Life Ins. Co. (253 App. Div. 563 [3d Dept., 1938]) does not touch on the question of waiver or estoppel.
There is a question of fact as to the applicability of an estoppel in the instant case. The motion for summary judgment, is, accordingly, denied. (Tyrnauer v. Travelers Ins. Co., 15 Misc 2d 18 [Supreme Ct., Kings County, 1958].)