**AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff,**

v.

**John HUCKLEBERRY, et al., Defendants.**

**Civ. A. No. CA 3–86–0504–G.**

United States District Court, N.D. Texas, Dallas Division.

June 27, 1986.

Simone S. Leavenworth, Barlow, Todd, Crews & Jordan, Galveston, Tex., for plaintiff.

Mitch Geller, pro se.

Joe Weis, Pemberton, Green, Newcomb & Weis, Greenville, Tex., for Deborah Huckleberry Stevens.

John Huckleberry, pro se.

Charles E. Miller, Jr., Mesquite, Tex., for Charlene Crawford.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion for summary judgment of defendant Deborah Huckleberry Stevens ("Stevens" or "the guardian"). Upon review of the motion, response, affidavits, exhibits, and brief, it is apparent that no issues of fact exist for trial. Consequently, for the reasons stated below, Stevens' motion is granted.

### I. *Background Facts*

American National Insurance Company ("American") interpled the $100,000 face amount of its policy insuring the life of Beverly Ann Huckleberry, deceased. Together with accrued interest, the fund now totals $115,560.

American's complaint in interpleader names four defendants whom it alleges have a potential claim to the proceeds: (1) John Francis Huckleberry ("Huckleberry"), whom the policy designates as first beneficiary; (2) a minor, Truett Jason Huckleberry ("the child"), whom the policy designates as the secondary beneficiary, represented here by Stevens, his guardian and natural mother;[1] (3) Charlene Crawford ("Crawford"), the mother and closest relative of the insured; and (4) Mitch Geller ("Geller"), the attorney who represented Huckleberry in the murder case in Colorado. Geller claims a 50% interest in the proceeds on the basis of an assignment from Huckleberry, apparently as compensation for Geller's services. Because Geller's claim is solely derivative of Huckleberry's, no separate consideration of it is necessary.

Huckleberry was a party and participant in civil action No. 42,540 in the District Court of Hunt County Texas, styled "In the Interest of Truett Jason Huckleberry, a

---

1. Stevens is the former wife of Huckleberry. Beverly Ann Huckleberry ("the insured") was married to Huckleberry at the time of her death. Huckleberry was convicted of murdering the insured and is presently serving a life sentence in the Colorado Department of Corrections. This conviction is on appeal to the appropriate Colorado appellate court.

Child," wherein the issue of entitlement to these insurance proceeds was litigated between Stevens (on behalf of the child) and Huckleberry. The district court concluded that the child was entitled to the insurance proceeds.[2]

## II. *Questions of Law*

This court is called upon to decide the following three questions of law as framed by Stevens:

1. Does Texas or Colorado law control the issue of entitlement to the insurance proceeds?

2. Has Huckleberry forfeited his right to receive the insurance proceeds due to his conviction for murdering the insured?

3. When a primary beneficiary has lost his rights to life insurance proceeds due to a conviction for murdering the insured, who then receives the proceeds: the innocent second beneficiary, or the heirs at law of the insured?

### A. *Choice of Law*

A federal court sitting in diversity must apply the choice of law rules of the forum state, in this case Texas. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941).

Under Texas law, in the absence of a contrary manifestation, an initial presumption is that the parties intend for the law of the jurisdiction where the contract is made to govern. However, where the contract is made in one jurisdiction, but to be performed in another, the presumption arises that the parties contracted with reference to the place of performance. *New York Life Insurance Company v. Baum*, 700 F.2d 928, 931 (5th Cir.1983).

Where a contract is made in one state but is to be performed partly in the state of making and partly in another state, the courts have ordinarily construed the contract in accordance with the law of the place where the contract was made. *Grace v. Orkin Exterminating Co.*, 255 S.W.2d 279, 294 (Tex.Civ.App.—Beaumont 1953,

writ ref'd n.r.e.); *Ramirez v. Autobuses Blancos Flecha Roja, S.A. de C.V.*, 486 F.2d 493, 496 (5th Cir.1973).

Texas courts have also held, however, that incidental performance in one state would not preclude the application of the law of the state where the bulk of performance occurred and in which the contract itself was made. The settled rule is that "[w]here most of the performance of the agreement occurs in Texas, the agreement will be covered by the laws of Texas." *Smith v. Bidwell*, 619 S.W.2d 445, 449 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

Analysis of Texas cases involving insurance contracts yields a number of rules upon which courts rely in determining the place of the making of the contract and the place of its performance. In *Seiders v. Merchants' Life Ass'n of the United States*, 54 S.W. 753 (Tex.1900), the Supreme Court of Texas held that where the insurance contract provided that the proceeds and premiums were payable at the insurance company's home office in Missouri, Missouri law controlled construction of the contract in absence of any special circumstances, even though the contract was actually made in Texas:

> Conceding that the contract of insurance was made in Texas, it is made payable at the home office, in the state of Missouri, and all premiums are likewise made payable there. It does not provide for any act to be done elsewhere by the company. A tender of the money at the home office would have been valid. Unless there be something in the circumstances which indicate that the parties contracted with reference to the laws of Texas, the legal effect of the contract must be determined according to the laws of the state of Missouri.

54 S.W. at 754.

In *Fidelity Mutual Life Ass'n v. Harris*, 57 S.W. 635 (Tex.1900), the court emphasized the importance of offer and accept-

---

**2.** The order awarding custody of the child to the guardian and awarding the insurance proceeds to the child was signed by Judge Richard Bosworth on April 24, 1985.

ance principles to determination of the question as to where a life insurance contract was made:

> The test is generally held to be the acquiescence or final agreement of minds by which the contract is concluded, and the place where that occurs is the place where the contract, for most purposes, is held to have been made. With reference to contracts of insurance, where applications or proposals are taken in one state by an agent having no authority to conclude the contract or bind the company, and are forwarded to the domicile of the company, and there accepted, and the policy issued, the contract is ordinarily to be treated as having been made at such domicile, and to be performed there. Whart. Confl. Laws, § 465; Bliss, Ins. § 362; May, Ins. § 66, and cases cited. This is true, however, only because the act of the company in signifying its acceptance of the proposal completes the contract; and when, as sometimes happens, other things are to be done before the parties are to be bound, the contract is held to have been made when and where such other things transpired. It is often stipulated in policies that they are not to take effect until the first premium has been paid, and the policy has been countersigned by the agent of the company in the place where the applicant resides; and it is held that the contract is to be considered as made where these acts are done.

57 S.W. at 638. The court then discussed the significance of a local agent's delivering the policy to the insured:

> The general rule is that the acceptance of the application and the issuance and mailing of the policy are all the acts that are essential to put the contract in force; and the fact that the policy is sent to an agent for unconditional delivery does not alter the effect of the transaction.

*Id.* at 639.

Thus, under Texas law, it is clear that where an agent must verify to his satisfaction a certain condition of the insured before delivering the insurance contract, the final act of the making of the contract occurs at the place where the insured resides. Where delivery of the policy is unconditional, however, the contract is deemed to have been made at the domicile of the insurance company. *Accord, Metropolitan Life Ins. Co. v. Bradley*, 82 S.W. 1031, 1032 (Tex.1904).

The principles outlined in *Seiders* and *Fidelity* are still applicable today. *Castilleja v. Camero*, 414 S.W.2d 424, 426 (Tex. 1967); *New York Life Insurance Co. v. Baum*, 617 F.2d 1201, 1204 (5th Cir.1980). Thus, in *Mutual Life Insurance of New York v. Anderson*, 408 S.W.2d 335 (Tex. Civ.App.—Dallas 1966, writ ref'd n.r.e.), the policy was sent to the insurance company's regional office to be held "pending the completion of the investigation by the home office as to whether [the insurance company] was satisfied that [the insured] was acceptable as an insurance risk under the company's standards." 408 S.W.2d at 340. The court held that where, by the terms of the application for an insurance policy, delivery of the policy was made a condition precedent to inception of the policy, and the policy was never delivered to the applicant, the contract of insurance had not been consummated. *Id.*

Similarly, in *American Nat. Ins. Co. v. Smith*, 13 S.W.2d 720 (Tex.Civ.App.—El Paso 1929, writ ref'd), the insurance policy contained the following delivery clause: "Deliver no policy without seeing the policyholder and satisfying yourself that the risk is in sound health. If appearance is not satisfactory, send the policy back to the Company, stating the cause and await further instructions." The court had no trouble concluding that an undelivered policy did not constitute an effective contract, and that the validity of the contract was to be determined by the place of delivery. 13 S.W.2d at 722.

■ Applying these principles to the present case, the court concludes that the contract was made in Texas and was to be substantially performed in Texas. The affidavit of Earl Hennessy, filed in support of Stevens' motion, attaches an exact copy

of the policy involved here. Hennessy's affidavit states that once the policy was issued and placed in the United States Mail at Galveston, Texas, the policy was in full force and effect with no other requirements to be fulfilled on the part of the insured. Thus, the acceptance of the application and the issuance and mailing of the policy, acts which were essential to the consummation of the contract, occurred in Texas.

The conclusion that Texas law controls the substantive outcome of this case is further supported by the fact that most of the performance of the contract would take place in Texas. *See Fidelity,* 57 S.W. at 639; *Seiders,* 54 S.W. at 754. The insurance policy provides in pertinent part:

"The Sum Insured is payable upon receipt at the Company's Home Office in Galveston, Texas, of due proof of the Insured's death." (policy page 1).

"Home Office: One Moody Plaza, Galveston, Texas...." (policy page 1).

"Signed for the Company at Galveston, Texas...." (policy page 1).

\* \* \* \* \* \*

"ASSIGNMENT. No assignment will bind the Company until recorded at the Home Office." (policy page 4).

\* \* \* \* \* \*

"CHANGE OF BENEFICIARY. The Owner may change a beneficiary if: (1) the Insured is living; and (2) written request in a form accepted by the Company is filed at the Home Office." (policy page 4).

\* \* \* \* \* \*

"NOTICES. All notices, applications and other correspondence required, by this policy or any attached riders, to be sent to the Company must be mailed or delivered to the Company's Home Office in Galveston, Texas." (policy page 4).

\* \* \* \* \* \*

"Premiums are payable at the Home Office ..." (policy page 3).

In *New York Life Insurance Co. v. Baum,* above, 700 F.2d at 931–33, the court considered a conflict of laws question arising on facts similar to those presented here and determined that the law of the state where the policy was issued and the contract was created would control. *Id.* at 931–33.

This court has found no authority, nor has it been referred to any, holding that the law of another jurisdiction should be applied. Consequently, applying Texas choice of law rules, the court concludes that Texas law applies in determining the entitlement to the insurance proceeds.

### B. *Huckleberry's Claim to the Proceeds*

Tex. Probate Code Ann. § 41(d) (Vernon 1980) provides in pertinent part:

"No conviction shall work corruption of blood or forfeiture of estate, except in the case of a beneficiary in a life insurance policy or contract who is convicted and sentenced as a principal or accomplice in wilfully bringing about the death of the insured, in which case the proceeds of such insurance policy or contract shall be paid as provided in the Insurance Code of this State, as same now exists or is hereinafter amended...."

The Texas Insurance Code provides in Art. 21.23 (Vernon 1981):

"The interest of a beneficiary in a life insurance policy or contract heretofore or hereafter issued shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured."

As evidenced by a copy of the judgment attached as an exhibit to Stevens' motion, Huckleberry was convicted of first degree murder of the insured and is currently serving a life sentence in the Colorado Department of Corrections. The judgment of conviction makes reference to section 18–3–102 of the Colorado Criminal Code which sets forth the elements of first degree murder.

Section 18–3–102 of the Colorado Criminal Code states in pertinent part, that "a person commits the crime of murder in the

first degree if ... after deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person". Section 18–3–101(3) of the Colorado Criminal Code defines "after deliberation" as

> ... not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner.

■ It is clear from a comparison of the language of Colorado Criminal Code sections 18–3–102 and 18–3–101(3) that the guilty verdict in Huckleberry's criminal trial is a judicial determination that Huckleberry was a "principal ... in willfully bringing about the death of the insured" which would dictate the forfeiture of his interest under Tex.Ins.Code Ann. art. 21.23 (Vernon 1981). The jury verdict in Huckleberry's criminal trial settles this issue as a matter of collateral estoppel.

Additionally, the doctrine of *res judicata* bars Huckleberry's claim to the insurance proceeds. Under the doctrine of *res judicata*, when a prior judgment is offered in a subsequent suit in which there is identity of parties, issues, and subject matter, the judgment is treated as an absolute bar to retrial of the claims determined by the judgment. *Bonniwell v. Beech Aircraft Corporation*, 663 S.W.2d 816, 818 (Tex. 1984).

As shown by the affidavits of Ann Prince, the District Clerk of Hunt County Texas, and Pat Winters, the attorney who represented Stevens as guardian in the Hunt County suit, Huckleberry was the respondent in a suit filed in Hunt County styled *"In the Interest of Truett Jason Huckleberry, a Child"*, Cause No. 42,540. The Hunt County action was brought by Stevens as the child's natural mother, seeking modification of the previous custody decree to give her permanent custody of the child. Prior to the murder of Beverly Ann Huckleberry and until modified by the Hunt County suit, Huckleberry had been granted custody of his son for five years.

On April 24, 1985, the Hunt County District Court issued an order appointing Stevens as managing conservator for the child. The court also held that Huckleberry had lost any claim to the proceeds of the policy due to his conviction and that the policy proceeds then passed to the child as secondary beneficiary.

Geller's claim to the proceeds must also fail since it is dependent upon the success of Huckleberry's claim. Only the claim of Crawford remains for consideration.

### C. Crawford's Claim to the Proceeds

Tex.Ins.Code Ann. art. 21.23 (Vernon 1981) provides that when a beneficiary in a life insurance policy has forfeited his entitlement to the insurance proceeds because of his participation in willfully bringing about the death of the insured, "the nearest relative of the insured shall receive said insurance."

■ As shown by the undisputed facts, the named secondary beneficiary under the policy is Truett Jason Huckleberry, the stepson of the insured. Although named as the secondary beneficiary, Truett Jason Huckleberry is not "the nearest relative of the insured." That person is Crawford, the mother of the insured. Hence, Article 21.-23, if construed literally, would support Crawford's claim to the insurance proceeds. However, in a very similar factual setting the Texas Supreme Court held "... we would distribute the insurance proceeds to the nearest relative of the insured under Article 21.23 only if *all* of the beneficiaries, primary and contingent, are disqualified from receiving such proceeds" (emphasis in original). *Deveroex v. Nelson*, 529 S.W.2d 510, 513 (Tex.1975). *Deveroex* makes clear that in this case the child, as an innocent secondary beneficiary, has a claim to the proceeds superior to Crawford's.

### III. Conclusion

After review of Stevens' motion for summary judgment, it is apparent that no issues of fact exist which would preclude

summary judgment. The issues presented are questions of law. After consideration of the questions of law presented by the motion, the court concludes that Stevens' motion for summary judgment is meritorious and is hereby **GRANTED.**

**SO ORDERED.**